UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARBARA L. YOAP,

       Plaintiff,

v.                                                      Case No. 17-C-1687

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## DECISION AND ORDER REVERSING COMMISSIONER'S DECISION

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Barbara L. Yoap's application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

On October 24, 2013, Yoap filed an application for DIB with an alleged onset date of January 1, 2012, due to lower lumbar pain, dystonia, anxiety, dyslexia, chronic back pain, arthritis, and degenerative disk disease. R. 63. Following the denial of her application initially and on reconsideration, Yoap requested a hearing before an administrative law judge (ALJ). ALJ Wayne L. Ritter conducted a hearing on September 7, 2016. Yoap, who was represented by counsel, and a vocational expert (VE) testified. R. 31–61.

At the time of the hearing, Yoap was 52 years old and lived with her husband in a house in Green Bay, Wisconsin. Yoap had worked as a bookkeeper for a grocery store until 2009, when the

store closed. She worked at a hair salon in 2012 but left that job after a couple of weeks because she could not understand how to use the computer programs associated with her job duties. R. 40. Yoap testified that she was diagnosed with dystonia, a condition that causes a person's muscles to contract uncontrollably, in 2002. The dystonia causes pain in her neck and shoulders that she treats by taking medication. R. 41. She further testified that she was diagnosed with neuropathy in 2014, which causes chronic pain, numbness, and tingling in her legs. R. 42. Yoap reported that she has concentration problems that began in 2007 but worsened in 2012. R. 42–43. She also indicated that a degenerative disk bulge causes pain in her lower back. R. 43. As to her activities of daily living, Yoap reported she uses the telephone, watches television, plays computer games, drives, and visits with her sisters. R. 44. She rated her pain on an average day as a six on a ten-point scale. R. 48.

In a decision dated November 9, 2016, the ALJ found Yoap was not disabled. The ALJ concluded Yoap had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2012, through her date last insured of December 31, 2014. R. 17. The ALJ found Yoap had the following severe impairments: disorders of the back and neck, dystonia, peripheral neuropathy, and anxiety. *Id.* He then concluded Yoap did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ ultimately determined Yoap had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), "except that she is further limited to work involving no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds and occasional crouching; and she is limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction

with the public and supervisors." R. 19. With these limitations, the ALJ found that Yoap was unable to perform any past relevant work as an accounting clerk. R. 24. He nevertheless concluded that there were jobs that existed in significant numbers in the national economy that Yoap could have performed, including housekeeper/cleaner, hand packager, industrial inspector, and assembler. R. 25. Based on these findings, the ALJ determined Yoap was not under a disability as defined in the Social Security Act at any time from January 1, 2012, the alleged onset date, through December 31, 2014, the date last insured. *Id.*

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Yoap's request for review on October 3, 2017. R. 1. After the Appeals Council issued its decision, Yoap commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not

3

substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Yoap raises a number of challenges to the ALJ's decision, but the court finds that only one need be addressed since it is enough by itself to require a remand. Yoap contends that the ALJ erred by failing to properly assess her deficits in concentration, persistence, or pace (CPP) when formulating the RFC assessment and hypothetical question posed to the VE. A claimant's RFC specifies the most that claimant can do despite the limitations caused by her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). An ALJ assesses a claimant's RFC "based on all the relevant evidence" in the case record, including severe and non-severe impairments as well as medical and non-medical evidence. § 404.1545(e). The ALJ's hypothetical question to the VE must then incorporate all of the limitations included in the RFC. *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Even though the SSA must consider opinions from medical sources, the "final responsibility" for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

Three doctors provided evaluations regarding Yoap's mental residual functional capacity. Dr. Weber completed a mental status evaluation on February 11, 2014. R. 303. He opined that Yoap would experience moderate to marked limitations in her ability to respond appropriately to supervisors and co-workers; moderate limitations in her ability to understand, remember, and carry

out simple instructions; moderate limitations in her ability to maintain concentration, attention, and work pace; and marked limitations in her ability to withstand routine work stresses and adapt to changes in the work environment. R. 309.

Susan Donahoo, Psy.D., a state agency consultant, also completed a Mental Residual Functional Capacity Assessment on February 26, 2014. She indicated that Yoap is markedly limited in her ability to carry out detailed instructions and moderately limited in her ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. R. 74. As to Yoap's social interaction limitations, Dr. Donahoo found Yoap is markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, observing that Yoap "would have moderate to marked limitations with [her] ability to respond appropriately to supervisors and coworkers." R. 75. Finally, as to Yoap's adaptation limitations, Dr. Donahoo determined Yoap is markedly limited in her ability to respond appropriately to changes in the work setting, explaining that Yoap "would have marked limitations in [her] ability to adapt to changes in the work place." *Id.* Dr. Donahoo concluded Yoap would not be capable of even unskilled work. *Id.*

After Dr. Donahoo submitted her opinion, the Office of Quality Review determined the consultative examination lacked sufficient findings to justify Dr. Donahoo's conclusion and recommend the state agency obtain updated records, intelligence testing, and memory testing to evaluate Yoap's claim. R. 206–08. Quality Analyst Lind-Jahn instructed disability examiner

McKeown to revise the prior assessment to reflect that Yoap had the capacity to sustain unskilled work and obtain Dr. Donahoo's signature. R. 313. Dr. Donahoo never signed the revised report.

Dr. Jan Jacobson, a second state agency consultant, completed a mental residual functional capacity assessment on January 15, 2015. R. 91. She indicated that Yoap is moderately limited in her ability to understand and remember detailed instructions but clarified that Yoap is able to understand and remember simple instructions; moderately limited in her ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and markedly limited in her ability to carry out detailed instructions. R. 91. Dr. Jacobson also noted that Yoap is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She explained further that Yoap is "able to sustain attention for simple, repetitive tasks for extended periods of two hour segments over the course of a routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances" but is unable "to do so for moderately detailed/complex tasks requiring sustained attention." R. 92. As to social interaction limitations, Dr. Jacobson determined Yoap is moderately limited in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors, noting Yoap "is able to sustain the basic demands associated with relating adequately to coworkers [and] supervisors within the above parameters" and "is able to deal directly with the public on an occasional basis." *Id.* Finally, with regard to Yoap's ability to adapt, Dr. Jacobson found Yoap is moderately limited in her ability to respond appropriately to changes in the work setting and

clarified that Yoap "is able to respond appropriately to infrequent changes within the parameters noted above" and "is aware of normal hazards and can take appropriate precautions." R. 92–93.

The ALJ gave little weight to the opinions of Dr. Weber. He noted that Dr. Weber's opinions reflect an overstatement of the exam findings, explaining that Dr. Weber's report contained few clinical findings and mainly consisted of a recitation of Yoap's allegations and that his opinions were inconsistent with Yoap's own reports of numerous functional activities as well as the medical records. R. 23. The ALJ also gave little weight to Dr. Donahoo's opinion, reasoning that insufficient medical documentation supported her assessment. R. 23. Although the ALJ concurred with Dr. Jacobson's determination that Yoap did not have an intellectual disability, the ALJ did not otherwise discuss Dr. Jacobson's assessment or weigh her opinions in his decision. Instead, he gave partial weight to the revised initial determination that was offered by a nonmedical agency examiner that was not endorsed by a psychologist.

In any event, the ALJ relied primarily on Yoap's activities of daily living to conclude that she had moderate difficulties in CPP and social functioning. R. 18. The ALJ then summarized Yoap's RFC: "[T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she is further limited to work involving no more than occasional climbing of ramps, stairs, ladders, ropes or scaffolds and occasional crouching; and she is limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public and supervisors." R. 19.

Yoap asserts this RFC does not sufficiently account for all of her moderate limitations in CPP. It is well-established in this circuit that "both the hypothetical question posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the

medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). In this case, the ALJ did not mention Dr. Jacobson's assessment and did not include the limitations she found related to Yoap's restrictions in CPP in formulating the RFC and hypothetical question. In particular, the ALJ never addressed Dr. Jacobson's opinion that Yoap is only able to sustain attention for simple, repetitive tasks for extended periods of two-hour segments. R. 92. Without any discussion of Dr. Jacobson's opinions regarding Yoap's functional limitations, the court cannot be sure the ALJ considered the assessment. The ALJ has therefore failed to build an accurate and logical bridge between all of the medical evidence pertaining to Yoap's limitations in CPP and the RFC and hypothetical question. The case will be remanded for this reason.

Yoap also challenges the ALJ's decision to give her treating physician, Dr. Durant, controlling weight. A treating source's opinion is entitled to "controlling weight" if it is adequately supported by objective medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). Yoap reasonably argues that the ALJ made no inquiry into whether Dr. Durant's opinion was not inconsistent with other substantial evidence, specifically the May 14, 2004 opinion of Dr. Kiser, which the ALJ concluded was irrelevant because the opinion was from long before the alleged onset date. Substantial evidence is "the amount of evidence which, while it may be less than a preponderance, nevertheless is sufficient to convince a reasonable mind of the validity of a position taken on an issue." SSR 82-13, 1982 WL 31370, at *3. Because Yoap's condition is degenerative, Dr. Kiser's opinion that Yoap needed to avoid strenuous activities with prolonged standing seems to constitute substantial evidence. In any event, this matter is being remanded on other grounds, so the court need not determine whether the ALJ's decision to give

controlling weight to Yoap's treating physician constitutes reversible error. The ALJ is reminded to consider these principles on remand.

## CONCLUSION

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this  2nd  day of January, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court